UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KEVIN COMBE,<br><br>    Petitioner,<br><br>    v.<br><br>MARION FEATHER,<br><br>    Respondent. | Case No. C12-843-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

I.     INTRODUCTION AND SUMMARY CONCLUSION

Scott Combe, a former federal prisoner at the SeaTac Federal Detention Center who is proceeding *pro so*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 10. Petitioner was released from detention on June 21, 2012, and is currently serving his term of thirty (30) months supervised release. *See* Dkt. 15, Ex. 1. In his habeas petition, petitioner asks the Court to vacate the remainder of his term of supervised release because he believes he is entitled to "credit" for the period of time when he was previously detained for a determination of whether he constituted a sexually dangerous person under 18 U.S.C. § 4248. *See* Dkt. 10 at 3, 6. The United States filed a response on June 29, 2012, contending that petitioner's federal habeas claims should be dismissed as moot, or alternatively, denied on the grounds that they barred by res judicata. Dkt. 15. To date, petitioner has failed to file a reply.

REPORT AND RECOMMENDATION
PAGE - 1

Because the Court can no longer afford petitioner the form of relief sought by his petition, and in any event, because petitioner's claims are barred by res judicata, the Court recommends that the petition, Dkt. 10, be DENIED and this case DISMISSED with prejudice.

## II.     BACKGROUND

The facts relevant to petitioner's claims are not in dispute. In November 2004, petitioner was sentenced to a term of thirty (30) months imprisonment, to be followed by a term of thirty-six (36) months supervised release, for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Dkt. 15, Ex. 2. Petitioner began his term of federal custody on December 2, 2004. *Id*. at 2. Although petitioner was scheduled to complete his sentence on January 29, 2007, the government filed a "Certification of a Sexually Dangerous Person" under 18 U.S.C. § 4248(a) (the "Walsh Act") on January 26, 2007. *See id*., Ex. 3; Dkt. 17 (Roush Decl.). As a result, petitioner remained in custody from January 2007 through October 2011 pending the completion of civil commitment procedures for a "sexually dangerous person" under 18 U.S.C. § 4248.

During petitioner's civil commitment detainment, petitioner filed a "Motion to Clarify Supervised Release Terms and Conditions" with the United States District Court for the District of Utah, seeking "a declaration from this Court that his term of supervised release has expired." *United States v. Combe*, 2011 WL 976892, *1 (March 18, 2011 D. Utah). Specifically, petitioner argued that his term of supervised release began on January 29, 2007, the date that his term of incarceration had been set to expire. The district court held that petitioner's supervised release term was stayed during his civil commitment detainment because he had not yet been released from the custody of the Bureau of Prisons, which is the trigger for the commencement of supervised release pursuant to 18 U.S.C. § 3624(e). *See id*. at *2. As a result, the district court denied petitioner's request for a declaration that his term of supervised release had expired. *See id*.

1      On October 6, 2011, petitioner was released from civil commitment detainment and commenced his thirty-six (36) month term of supervised release term in accordance with the Settlement Agreement between petitioner and the United States, as well as the United States' Motion for Voluntary Dismissal. *See* Dkt. 15, Exs. 5-6. Specifically, on October 15, 2011, the United States District Court for the Eastern District of North Carolina ordered that "the stay of [petitioner]'s release from Bureau of Prisons custody [be] lifted, and [petitioner ] is ordered to be released from Bureau of Prisons custody." *Id.*, Ex. 5. The district court further ordered that plaintiff "shall be placed on supervised release for a term of 36 months and shall abide by the special conditions of supervised release." *Id.*

      On December 23, 2011, petitioner was apprehended for non-compliance with the terms of his supervised release for associating with a convicted felon. *See id.*, Ex. 7. On January 17, 2012, petitioner was sentenced to a term of six (6) months imprisonment, with a projected release date of June 21, 2012, and thirty (30) months supervised release. *See id.*, Ex. 8.

      Petitioner filed the instant habeas petition on June 6, 2012, when he was incarcerated at the SeaTac Federal Detention Center in Seattle, Washington, following his parole violation. Dkt. 10. In his habeas petition, petitioner contends that he is entitled to "credit . . . for time spent in a penal institution under an order of commitment" for the time he was detained pending a determination of whether he was a "sexually dangerous person." *Id.* at 3. He asserts that his "'detention' under the guise of 'civil commitment' was unconstitutional and illegal and therefore his request for the vacation of [the] remainder of [the term of] supervised release being imposed should be awarded as a sanction for the wrong committed against him[.]" *Id.* at 10. Thus, the specific relief requested by petitioner in this case is "vacation of the 30 months probation that petitioner remains to serve" after he violated the terms of his supervised release in 2011. *Id.* at 12.

      On June 21, 2012, petitioner was released from federal detention after completing his six month sentence. Dkt. 15, Ex. 1. He is currently serving his term of supervised release.

III.     DISCUSSION

A.     Petitioner's Federal Habeas Petition Should be Denied As Moot

   1.     *Mootness*

Federal jurisdiction is limited to actual, ongoing "cases" or "controversies." U.S. Const. Art. III, § 2, cl. 1; *see also Spencer v. Kemna,* 523 U.S. 1, 7 (1998). A claim is moot when "the issues presented are no longer live," and there exists no "present controversy as to which effective relief can be granted." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 900 (9th Cir. 2007) (quoting *Vill. of Gambell v. Babbitt,* 999 F.2d 403, 406 (9th Cir. 1993)). To maintain a claim, a litigant must continue to have a personal stake in all stages of the judicial proceeding. *Abdala v. INS,* 488 F.3d 1061, 1063 (9th Cir. 2007) (internal citation omitted).

The purpose of a writ of habeas corpus "is to secure immediate release from illegal physical custody." *Picrin–Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991). The only power the Court has to effectuate relief in a habeas petition is "the power to release" the petitioner from incarceration. *Id.* (internal citation omitted). When a petitioner is released from the custody of which he complains, there is no further relief a habeas court can grant and the habeas petition is moot. *Id.* at 776.

In limited cases, however, a habeas petition may remain a live case even though a petitioner is released from custody. For instance, in cases challenging the actual criminal conviction a habeas petition will not be moot upon the petitioner's release from incarceration. The case remains live because there are a number of civil disabilities following a criminal conviction including limitations on a convict's ability to engage in certain businesses, to vote, or to serve as a juror. *United States v. Verdin,* 243 F.3d 1174, 1177 (9th Cir. 2001) (citing *Carafas v. LaVallee,* 391 U.S. 234, 237-238 (1968)). These "collateral consequences" are sufficient to satisfy Article III's case-or-controversy requirement. *Id.* A collateral

consequence must be a "concrete and continuing injury" other than the completed incarceration. *Spencer,* 523 U .S. at 7.

    *2. Petitioner is Not Entitled to "Credit" for his Term of Supervised Release*

As mentioned above, petitioner argues that he is entitled to "credit" against his current term of supervised release for the time he was detained from January 2007 through October 2011 pending a determination of whether he was a "sexually dangerous person" under 18 U.S.C. § 4248. Dkt. 10 at 3. He asserts that his "'detention' under the guise of 'civil commitment' was unconstitutional and illegal," and asks the Court to vacate his term of supervised release. *Id*. at 10.

The United States responds that "petitioner's release from custody nullifies [his] claim as there is no remedy available that the Court could impart . . . Once all of Petitioner's 'jail time] credit had been calculated his release date was adjusted to reflect that credit and changed to a projected GCT release of June 21, 2012." Dkt. 15 at 5; Dkt. 17 (Roush Decl.). Because "petitioner's prior sentence data reflects that he received all credit for his 'jail time' . . . any possible remedy the court could provide has been removed." Dkt. 15 at 5. Finally, the United States asserts that "petitioner's claim that he should receive more credit does not present a 'legally cognizable interest,'" and therefore "this petition should be dismissed or denied as moot." *Id.*

A few cases from the Ninth Circuit finding exceptions to the mootness doctrine applicable in the habeas context are clearly distinguishable from this case, and inform this Court's decision that petitioner's claims are moot. In *Mujahid v. Daniels*, the Ninth Circuit held that a habeas petition did not become moot when the federal prisoner was placed on supervised release. 413 F.3d 991 (9th Cir. 2005). The petitioner argued the BOP wrongly interpreted the good conduct time statute and as a result, miscalculated his good time credits. The Ninth Circuit held that "[t]he possibility that the sentencing court would use its discretion to reduce a term of supervised release under 18 U.S.C. § 3583(e)(2) was enough to prevent the

REPORT AND RECOMMENDATION
PAGE - 5

petition from being moot." *Id.* at 995 (internal citation and quotation marks omitted). Similarly, in *Gunderson v. Hood*, the petitioner challenged a BOP practice affecting the length of his sentence. 268 F.3d 1149, 1153 (9th Cir. 2001). While the Ninth Circuit recognized it could not order as relief a reduction in prison time because the petitioner would not be eligible for relief before his incarceration would be complete, the court found his petition was not moot because "the possibility" that the sentencing court could use its discretion under 18 U.S.C. § 3583(e) to reduce the petitioner's supervised release to be sufficient to prevent his habeas petition from being moot. *Id. See also United States v. FigueroaOcampo,* 494 F.3d 1211, 1216-17 (9th Cir. 2007) (holding that a habeas petition was not moot because the petitioner challenged the length of the original sentence and if favorably resolved, could have faced shorter term of supervised release upon resentencing); *United States v. Allen,* 434 F.3d 1166, 1170 (9th Cir. 2006) (same); *United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001) (holding that a habeas petition was not moot because a sentencing error, if favorably resolved, could reduce the term of the petitioner's supervised release upon resentencing). Finally, in *Reynolds v. Thomas*, the Ninth Circuit held that a habeas petition was not moot when a petitioner argued the BOP did not credit his federal sentence with the time he spent in state custody. 603 F.3d 1144, 1148 (9th Cir. 2010). The Court noted that if the petitioner's habeas petition was favorably resolved, the alleged period of over-incarceration could be a factor in reducing the petitioner's term of supervised release pursuant to 18 U.S.C. § 3583(e). *Id.*

These Ninth Circuit decisions are all distinguishable from petitioner's case, because the cases all challenged the validity of the actual conviction, the term or length of a sentence as it was imposed, or the length of incarceration due to a miscalculation of good time credits. Most importantly, however, in each of these cases there appeared a realistic possibility that a sentencing court might use its discretion to reduce a term of supervised release. That is not the case here. Petitioner has already served his term of incarceration, and there is no evidence that petitioner's "jail time" credit was improperly calculated. *See* Dkt. 17 (Rouse Decl.). Petitioner

REPORT AND RECOMMENDATION
PAGE - 6

1  is simply repeating his argument, previously rejected by the United States District Court for the
2  District of Utah, that he should be entitled to some kind of "credit" against his term of
3  supervised release for any time he was detained pending a determination that he was a
4  "sexually dangerous person" under 18 U.S.C. § 4248.  As that court held, 18 U.S.C. § 4248(a)
5  "stayed" his release from prison pending the completion of civil commitment procedures, and
6  therefore his term of supervised release, which commences on the actual day he is released
7  from the custody of the Bureau of Prisons, had not yet commenced.  The court did not find that
8  he was entitled to any kind of "credit" for the period when the stay was in effect.  Thus,
9  although petitioner is still serving a term of supervised release, his case is not similar to cases
10 in which the Ninth Circuit has found the possibility that a sentencing court might use its
11 discretion under 18 U.S.C. § 3583(e) to reduce his term.
12         Finally, the Court notes that petitioner's September 30, 2011 Settlement Agreement
13 with the United States , which resulted in the stay being lifted and petitioner being released
14 from BOP custody in October 2011, was expressly conditioned upon petitioner's agreement
15 not to bring the instant habeas action challenging his remaining term of supervised release.
16 Specifically, the Settlement Agreement provides that the petitioner "admits and stipulates that,
17 by the operation of law defined by 18 U.S.C. § 4248, his 'release' from imprisonment was
18 'stayed,' and that, consequently, his term of supervised release has not commenced." Dkt. 15,
19 Ex. 6.  Moreover, "in consideration of the United States' agreement to voluntarily dismiss this
20 action, [petitioner agreed not to] collaterally attack the order of supervised release contained in
21 the criminal judgment against him." *Id*.
22         Thus, petitioner has already waived his right to collaterally attack his term of
23 supervised release.  Even if this Court were to find he was entitled to relief, this Court does not
24 have the power to grant it.  Accordingly, petitioner's habeas claims should be DENIED as
25 moot.
26

B.     Petitioner's Federal Habeas Claims are Barred by Res Judicata

*1. Res Judicata*

Res judicata, or claim preclusion, means that a valid final adjudication of a claim precludes a second action on that claim or any part of it. Specifically, res judicata applies when there exists between two separate cases (1) identity or privity between the parties, (2) a final judgment on the merits in the first case, and (3) identity of claims. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981); *Blonder-Tongue Lab v. University of Ill. Found.,* 402 U.S. 313, 323-24 (1971); *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982); *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997). All three of these essential elements must be shown for res judicata to apply. Moreover, a change in the legal theory underlying claims brought in the first round of litigation will not defeat res judicata. *See Mpoyo v. Litton Electro-Optical Systems,* 430 F.3d 985, 988 (9th Cir. 2005).

In defining the word "privity" in the context of res judicata, the Ninth Circuit has explained that privity "is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997). Federal courts have recognized several relationships close enough to trigger preclusion. Relevant to this case, privity is established where the interests of a non-party were represented adequately by a party in the original suit. *See id.* With respect to the second element, the Ninth Circuit has found that a dismissal with prejudice is a phrase often used interchangeably with the phrase "final judgment on the merits." *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002); *see Leon v. IDX Systems Corp.,* 464 F.3d 951, 962 (9th Cir. 2006).

Finally, to determine whether identity of claims has been established, federal courts consider: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is

1  presented in the two actions; (3) whether the two suits involve infringement of the same rights;
2  and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini,*
3  681 F.2d at 1201; *see Adams v. California Dep't of Health Servs.,* 487 F.3d 684, 689 (9th Cir.
4  2007). The last of these criteria is considered the most important, and "[n]o single criterion can
5  decide every res judicata question [because] identity of causes of action cannot be determined
6  precisely by mechanistic application of a simple test. *Femnist Women's Health Center v.*
7  *Codispoti,* 63 F.3d 863, 867 (9th Cir. 1995); *Costantini,* 681 F.2d at 1202 n. 7

8  *2.  All Three Essential Elements are Satisfied*

9  As a threshold matter, the Court finds the first two elements of privity and a prior final
10 judgment on the merits to have been established.  Specifically, this habeas case involves
11 petitioner and the United States, the same parties as petitioner's previous action in the United
12 States District Court for the District of Utah. *See Combe*, 2011 WL 976892, at *1-2.
13 Moreover, petitioner's prior case was denied by the U.S. District Court for the District of Utah
14 with prejudice. *See id.* at *2.

15 Although petitioner has attempted to frame his legal argument slightly differently, the
16 Court finds that the third and final element, "identity of claims," has also been established.  In
17 the prior case, petitioner argued that his thirty-six (36) month term of supervised release had
18 expired, because the term should have run while he was being detained from January 2007
19 through October 2011 under 18 U.S.C. § 4248. *See Combe*, 2011 WL 976892, at *1.
20 Similarly, in this case, petitioner argues that his thirty (30) month term of supervised release
21 (which ultimately stems from the same conviction) should have expired, because he should
22 receive "credit" for that same period of detainment.  If this Court were to grant petitioner's
23 request, such a ruling would destroy or impair the prior judgment.  Moreover, an evaluation of
24 plaintiff's claims involves the same evidence, the same rights, and the same transactional
25 nucleus of facts. *See Costantini,* 681 F.2d at 1201.  As the United States argues, petitioner is
26 once again "seeking this Court to decide that his supervised release term expired while he was

in custody awaiting the completion of his civil commitment procedures" from January 2007 through October 2011.  Dkt. 15 at 7.  As all three essential elements are satisfied, this habeas action is barred by the doctrine of res judicata.

## IV.    CONCLUSION

For the foregoing reasons, this Court recommends that the habeas petition, Dkt. 10, be DENIED, and this case DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 8th day of August, 2012.

_____
JAMES P. DONOHUE
United States Magistrate Judge